# CHARLESTON.

## McNeel's Ex'rs v. Auldridge.

Submitted January 20, 1891.—Decided February 9, 1891.

1. JUDGMENT LIEN—EQUITY—DEED ABSOLUTE IN FORM—MORT-
    GAGES.

    In a suit in equity, brought for the purpose of enforcing a judgment-lien, which judgment was obtained against the defendant by default, the defendant will not be allowed to make any defence against said judgment which might have been successfully made in a Court of law, unless he shows some reason founded on fraud, accident, surprise or some adventitious circumstance beyond his control, why the defence at law was not made.

2. DEED—MORTGAGE—EVIDENCE.

    A deed of conveyance, absolute on its face, may be shown by parol evidence and surrounding circumstances to be a mortgage.

3. DEED—MORTGAGE.

    A case in which a deed of conveyance, although absolute on its face, under the circumstances was held to be a mortgage.

*R. S. Rucker* for appellant cited:
25 W. Va. 118; 16 W. Va. 466; 6 Ad. & E. 460; Big. Estop. 477–479; Ad. Eq. 96 note; 26 W. Va. 468, 469; Id. 27, 28.

*R. S. Turk* for appellee cited:
2 Mass. 495; 4 N. J. L. 268; 1 N. H. 41; 44 Me. 299; 1

Washb. Real Prop. 475 ; 4 W. Va. 4 ; 12 W. Va. 282 ; 1 Wash. 14 ; Id. 125 ; 4 Leigh 266 ; 1 Rob. 144 ; 24 Gratt· 367 ; 29 Gratt. 27, p't 3, Syll.; 1 Wis. 574 ; 24 Pick. 252 ; Branett Sur. & Guan. § 78, 79 ; Id. 290, 334 ; 2 Ohio St. 1 Id. 20 ; Id. 90 ; 10 Cal. 517 ; 27 Ohio 502 ; 1 Paine C. C. 305 ; 33 Ill. 308.

English, Judge :

This cause was before this Court on a former occasion ; and a decision was rendered therein on the 15th day of November, 1884, 25 W. Va. 113, remanding the case to the Circuit Court of Pocahontas county, with leave to file an amended bill, making additional parties defendant. A complete statement of the case as it then existed may be found in the opinion of Judge Johnson, delivered at that time. A considerable portion of said statement was made to show the want of necessary parties before the Court which rendered the decree complained of ; and it is only thought necessary at this time to state such facts appearing in the record as may be necessary to show how the questions arise which are presented for our consideration and determination by the present appeal.

The original bill was filed by the executors of Paul McNeel, deceased, against Samuel Auldridge and others for the purpose of subjecting certain lands of his, situated in the county of Pocahontas, to sale for the payment of a judgment-lien for two thousand sixteen dollars and eight cents, with interest from the 3d day of May, 1876, and costs, which judgment was predicated upon two bonds— one for one thousand dollars, dated the 6th day of October, 1869, and due five years after date with interest payable to said Paul McNeel, which note was secured by a deed of trust executed by said Samuel Auldridge on the land on which he resided in said county and all contiguous tracts which belonged to him, or such part thereof as lies southeast of the Greenbrier river, which deed of trust was dated and recorded the 4th day of June, 1870; and also a bond for seven hundred dollars, dated June 1, 1871, due three years after date with interest from the 1st day of June, 1872, which was executed by said Samuel Auldridge to said Paul

McNeel as part of the purchase-money of land bought by him from plaintiff's testator; and they assert a lien for said purchase-money.

At April rules, 1879, the said Samuel Auldridge filed a cross-bill, in which, among other things, he stated that previous to the 15th day of October, 1863, he purchased of John H. Ruckman certain lands situated in Pocahontas county, on the Greenbrier river, at the mouth of Stamping creek, which was paid for, and was conveyed to him by said Ruckman and wife; and on the 9th of May, 1866, said Ruckman and wife, in consideration of two thousand dollars previously paid therefor, conveyed to him certain lands in said county, on the west side of said river, at the mouth of Stamping creek, copies of which deeds are exhibited with said cross-bill; that said Paul McNeel and the defendant, Joseph Beard, exhibited a bill in said Circuit Court against said John H. Ruckman, Samuel Auldridge, the plaintiff in said cross-bill and others alleging that a decree had been rendered against said John H. Ruckman and said Paul McNeel and Joseph Beard—the latter two as sureties —by the Circuit Court of Greenbrier county at its April term, 1867, in favor of Joseph Feamster, as guardian *etc.*, for the sum of four thousand four hundred dollars, with interest thereon from the 15th day of October, 1859, till paid, and costs; subject to a credit of nine hundred dollars as of 20th of December, 1866; that said Paul McNeel and Joseph Beard had paid off and discharged said decree, and that said John H. Ruckman was owner of certain lands therein described; and also that said lands of plaintiff, above described, which he had purchased of said John H. Ruckman, as well as other lands, were subject to the lien of said decree; and praying a sale thereof to pay amount of said decree to said McNeel and Beard; that on the 6th day of October, 1869, during the pendency of said last-named suit, the said Paul McNeel, Joseph Beard and said Samuel Auldridge entered into a written agreement by which said McNeel and Beard bound themselves to dismiss said suit as to said Auldridge, and to sell said land conveyed to him as aforesaid by John H. Ruckman; and said Auldridge agreed to execute his two bonds of one thousand dollars

each, date October 6, 1869, with interest from date, due in five years—one payable to Paul McNeel, and the other to said Joseph Beard; and said agreement had a condition indorsed thereon to the effect that said agreement and bonds should be wholly void in case said John H. Ruckman paid the security debt above mentioned, which condition was subscribed by said Paul McNeel, Joseph Beard and Samuel Auldridge, a copy of which agreement he exhibited; that in pursuance of said agreement he executed his two bonds for one thousand dollars each, as provided therein, and delivered one to Paul McNeel, and the other to Joseph Beard; and on the 4th day of June, 1870, executed said deed of trust to secure payment of the same, and on the same day said McNeel and Beard had recorded in the recorder's office of Pocahontas county a deed from John H. Ruckman and wife to them for all the lands owned by said Ruckman, the existence of which deed was unknown to him, the said Auldridge; and on that day, or soon after, said Ruckman delivered to said McNeel and Beard two bonds amounting to one thousand five hundred and five dollars, as of that date, on the "Fairmont Agricultural Association," in part discharge of said decree in favor of Joseph Feamster; and in said last-named deed the said Ruckman, after reciting said Feamster judgment or decree, and its payment by said McNeel and Beard, by which he (Ruckman) became indebted to them in the amount of said judgment, interest, and costs, grants all said lands of John H. Ruckman to them, upon consideration of said indebtedness, and in order to pay off and discharge the same, said consideration and purpose being expressed that on the 25th day of July, 1870, the said Paul McNeel wrote said Auldridge a letter (he, Auldridge, not yet knowing anything of the execution of said deed) stating that said Ruckman had deeded to said McNeel and Beard all his lands in Marion county of the probable value of twenty thousand dollars or thirty thousand dollars, subject to incumbrances of about ten thousand dollars, and saying that said McNeel and Beard would attempt to redeem the property, in which event he (Auldridge) would be called on to pay McNeel what he was owing him, by which said McNeel meant the resi-

due of said seven hundred dollar bond, the balance unpaid of which is incorporated in said judgment above mentioned of two thousand sixteen dollars and eight cents, obtained by Paul McNeel's executors against said Auldridge, which letter is exhibited with said cross-bill; that on the 11th of March, 1872, said Paul McNeel and Joseph Beard dismissed their suit against Joseph H. Ruckman and others, brought to subject his lands to the satisfaction of said Feamster decree, and soon after the dismissal of said last-named suit said Paul McNeel died, and his executors brought an action at law upon said one thousand dollar bond delivered to Paul McNeel, as above stated, and another bond of seven hundred dollars, upon which said Auldridge was then owing a balance, and on the 3d day of May, 1876, recovered the said judgment of two thousand sixteen dollars and eight cents against him, he not appearing to defend said action at law upon advice that his more appropriate remedy for relief against said one thousand dollar bond was in a court of equity, which last-named judgment was the same, satisfaction of which was sought out of the lands of said Auldridge by said suit upon the original bill aforesaid of Paul McNeel's executors against him and others; that the said one thousand dollar bond of Paul McNeel, with interest to date of judgment (May 3, 1876) amounts to the sum of one thousand three hundred and ninety five dollars; and that the defendant Joseph Beard proposed to use the said trust-deed executed by said Auldridge on the 4th of June, 1870, in connection with the bond for one thousand dollars executed to him as aforesaid, for the purpose of obtaining a decree and subjecting the lands of said Auldridge to sale to discharge said one thousand dollars and its interest, and has filed the same before the commissioner, and had him to report it with that view; that a large part of the lands of said Ruckman conveyed to said Paul McNeel and Joseph Beard had been sold by them, as he was informed, at ruinous sacrifices to him, in case he was decreed to have recourse to the proceeds thereof, and should have to pay any of said two one thousand dollar bonds; that by the terms of the deed they have accepted, both by receiving the deed and in holding and disposing of the property therein con-

veyed, they have acknowledged satisfaction of their claim against Ruckman, so as to prevent any recourse against the estate of said John H. Ruckman, then deceased, and that he should not be further vexed on account of said Paul McNeel and Joseph Beard making themselves the securities of said John H. Ruckman, and that he is advised that he can not be made to pay the amount of said two one thousand dollar bonds until said McNeel and Beard account for the proper value of the lands sold by them and those which they still hold under said conveyance from Ruckman, by the terms of which, however, and their acceptance thereof, he is advised their claim against Ruckman was discharged, and the condition aforesaid on said agreement with said Auldridge made operative, and the two bonds aforesaid of one thousand dollars each rendered null and void, and the trust-deed aforesaid caused to be become nugatory ; and he prayed that said judgment of two thousand sixteen dollars and eight cents be perpetually enjoined as to the sum of one thousand three hundred and ninety five dollars, part thereof, as of date of judgment, and that said trust-deed be declared void and of no effect, and that said Joseph Beard be compelled to deliver up said one thousand dollar bond held by him, for cancellation, and that said agreement of October, 1869, be produced in court *etc.*

This cross-bill was answered by the executors of Paul McNeel, in which they say that in the month of April, 1876, they instituted an action of debt in the Circuit Court of said county against Samuel Auldridge on two bonds—one for one thousand dollars, executed to Paul McNeel by said Samuel Auldridge on the 16th day of October, 1869, and due five years after date, with interest from date ; the other, executed by same to same on the 1st of June, 1871, for seven hundred dollars, and due three years from date, with interest from date ; on which last bond several credits were indorsed ; that said Auldridge having been served with process, and failing to appear at the May term, 1876, a judgment for two thousand sixteen dollars and eight cents was rendered against him, with interest thereon from May 3, 1876, till paid, and costs ; that the one thous-

and dollars aforesaid is the same referred to in the defendant's cross-bill; that the defendant Auldridge could have appeared to this action, and have made the same defence he is now seeking to set up in his cross-bill under the plea of payment or of accord and satisfaction, or some other proper plea ; and thus, having had a day in court, as well as a complete remedy at law, that he could not re-open this matter by a cross-bill; and they plead and rely on said judgment at law as a bar to any further litigation touching said one thousand dollar bond as fully as though more formally pleaded, and they exhibit a copy of said record at law with their answer.

The defendant Joseph Beard also answered said cross-bill, and says that in the month of April, 1878, one James Kellison, who sued for the benefit of said Auldridge, instituted an action of debt in the Circuit Court of said county for the sum of nine hundred and eight dollars and forty cents, with interest from March 21, 1869, till paid, against respondent; that respondent, being duly served with process, appeared, and filed as an offset a bond which he held against said Samuel Auldridge for one thousand dollars, dated October 6, 1869, and due five years after date, with interest from date ; being the same bond mentioned in said cross-bill; that issues were properly made up in said action of debt on the pleas of payment and offsets, and at the October term, 1878, of said court a trial was had before a jury, and a verdict was rendered for the defendant for the sum of one thousand two hundred twenty nine dollars and twenty two cents, with interest from October 2, 1878, till paid, and costs, on which verdict the court rendered a judgment for respondent, and a copy of the record in said action of debt was exhibited with said answer.

Respondent further said that the matters in litigation between said Auldridge and himself, as set out in said cross-bill, had been fully settled and determined by a court of competent jurisdiction, and for that reason he denied the right of said Auldridge to the relief prayed for, so far as he is concerned, and he pleaded and relied on said judgment in his favor on said one thousand dollar bond as a bar to any further litigation involving the amount due respondent on said bond.

Said Joseph Beard also by his answer put in issue the other material allegations in said cross-bill contained as to him, and claimed that said Ruckman had conveyed his said lands to said McNeel and himself in order that they might reimburse themselves to some extent; that most of the lands conveyed to them by said Ruckman were wild and unimproved, and of little value, and his title to many of them was worthless ; and that said Ruckman has never paid anything like the amount of his indebtedness to said McNeel and himself, specifying the sales made and amount received therefrom.

By a decree rendered in said cause on the 29th day of September, 1879, the Court held that the deed of March 12, 1870, executed to Paul McNeel and Joseph Beard by said John H. Ruckman, must be treated as a mortgage to secure the indebtedness of said Ruckman to said McNeel and Beard, and that the lands conveyed therein were not taken by said grantees in full satisfaction of their debts, and referred the cause to a commissioner to ascertain what credits said Ruckman was entitled to on his debt of four thousand four hundred dollars, due to · Joseph Beard and Paul McNeel's estate, entering as credits the money received on the lands sold by them under the deed aforesaid, and any other payments made, and to show the amount due on said debt; whether said McNeel and Beard have, as mortgagees, acted judiciously ; the value and description of the unsold lands conveyed by said deed *etc.* Said decree was complied with, and exceptions indorsed on said report, and numerous depositions were taken in the cause, and on the 17th day of October, 1881, a decree was rendered in said cause, ascertaining the amount due Paul McNeel's executors, including the cost of the judgment at law, to be two thousand six hundred ninety seven dollars and ninety one cents, as of that date, from said Auldridge, and the amount due Joseph Beard from him as of the same date to be one thousand four hundred seventy two dollars and twenty cents ; and also ascertaining the amount of other debts due from said Auldridge, as shown by said commissioner's report ; decreed for said amounts against said Auldridge, and provided that, unless they were paid in ninety ·days

from the adjournment of the court, a commissioner therein appointed should sell the lands of said Ruckman upon the terms therein set forth, the proceeds to be .applied as therein provided.

From this decree the appeal hereinbefore mentioned was taken to this Court, which resulted in reversing all of the decrees entered in the case for want of proper parties; setting aside any sale of the three thousand six hundred acres, and any other sales of said Ruckman's lands made in the cause, and placing the purchasers *in statu quo ;* and the cause was remanded to the Circuit Court of Pocahontas county, with leave to file an amended bill making the proper parties defendant.

When the mandate was entered, said executors of Paul McNeel, deceased, filed an amended bill, making proper parties, and reciting the allegations of the original bill, and reiterating them, stating the amount that their testator and Joseph Beard were entitled to by reason of having paid said decree to Joseph Feamster, guardian *etc.;* against the estate of John H. Ruckman ; that the conveyance of said lands in Marion county and Pocahontas county to them by said Ruckman, while absolute on its face, was neither tendered nor received as anything other than a mortgage, and, was always so treated by the grantees; that, while it purported to convey land of great value, yet, when stripped of prior incumbrances, it proved to be of little value, that they never had examined the titles, and knew little of its location or value; ' that liens existed against portions of it, under which it was about to be sold. And they pray that the accounts of said Ruckman's administrator be settled; that said Ruckman's creditor's may be convened; that the thirty six hundred acres of land lying on Buckley mountain may be sold (which is described in Exhibit A E, filed with the cross-bill of Samuel Auldridge) and the proceeds applied to the payment of the plaintiff's debt in so far as the same may be applicable; and if any portion of the same remains unpaid thereafter, that the same, along with that portion of plaintiff's judgment against said Auldridge, be decreed to be paid by said Auldridge, and, in the event it be not done, that the sale of said

Auldridge's land be decreed to pay the same, and that said amended bill be taken and read with said original bill in the cause, and, for reasons therein stated, that said Auldridge's lands be rented during the time the affairs of said John H. Ruckman, deceased, were being settled; and for general relief.

On the 8th day of April, 1885, said cause was referred to a commissioner to settle the accounts of the administrator of John H. Ruckman, deceased; also showing the amounts, dignities, and priorities of the debts due from John H. Ruckman, deceased, both of lien and open contract creditors, the lands owned by him and their probable value, also the liens against the lands of Samuel Auldridge, with their amounts, dignities and priorities, also the lands owned by said Auldridge, their quantity, location and probable value and whether the rents and profits thereof will in five years discharge the debts due from said Auldridge *etc.*; and also directing a commissioner therein appointed to rent out the lands of said Auldridge upon the terms therein prescribed.

On the 19th day of October, 1887, said Samuel Auldridge demurred to said amended bill, and also filed his answer to said original and amended bill, in which he alleged that the debts set up by said plaintiffs and said Joseph Beard grew out of a transaction between said Paul McNeel and Joseph Beard and John H. Ruckman, and that a suit was instituted against the lands of respondent to subject them, in which the compromise and agreement between him and Paul McNeel and Joseph Beard was exhibited as set out in the original proceedings in the cause; and, while he admits that he owes some debts to some of his co-defendants, he denies that he owes the plaintiffs or his co-defendant, Joseph Beard, as alleged in said bill. He alleges that said deed from John H. Ruckman to said Paul McNeel and Joseph Beard, dated on the 12th day of March, 1870, was an absolute deed, so made and so accepted, and was received by said McNeel and Beard at the time in full payment of the indebtedness of said Ruckman to said McNeel and Beard. He makes the cross-bill filed in the original suit, with its exhibits filed therewith, part of his answer; denies the material allegations of said amended bill; and

avers that by the will of said Paul McNeel, Rachel C. Mc-
Neel, named as one of the plaintiffs, took all of his pro-
perty, including the debt set up by plaintiffs, that she has
departed this life, and has no personal representative; and,
until a personal representative is appointed, the suit must
abate, so far as these plaintiffs are concerned.

In pursuance of said decree of reference one of the com-
missioners made his report, which was excepted to by said
Samuel Auldridge because said commissioners reported a
judgment in favor of Paul McNeel's executors for two
thousand four hundred eighty six dollars and thirteen
cents, and two judgments of two thousand one hundred
nine dollars and sixteen cents each—one in favor of
Paul McNeel's executors, and the other in favor of Joseph
Beard—and another debt in favor of Joseph Beard for one
thousand nine hundred forty eight dollars and forty
nine cents, all as of April 1, 1888; all of which debts grew
out of and are the same debts covered by the two judg-
ments of one thousand dollars each—one in favor of Paul
McNeel's executors, the other in favor of Joseph Beard—
and which were paid by the conveyance from John H. Ruck-
man to said McNeel and Beard of March 12, 1870; that
said debts of McNeel's executors and Joseph Beard should
not have been allowed against said Auldridge, they having
been paid by the conveyance of March 12, 1870; that the
plaintiffs, if mortgagees under the deed from John H.
Ruckman, could not sell the lands under said deed without
the sanction of a court of equity etc. Other exceptions
were indorsed, but these cover the points raised in the
assignment of errors.

On the 4th day of April, 1888, the court overruled the
first exception of said Samuel Auldridge to said commis-
sioner's report as to the debts due to Paul McNeel's execu-
tors and Joseph Beard, and confirmed said report as to the
classification and allowance thereof, and held that the deed
from John H. Ruckman and wife to Paul McNeel and
Joseph Beard, dated March 12, 1870, was, in effect, a
mortgage, instead of an absolute conveyance, and was
treated as such by the parties thereto, and did not extin-
guish the two bonds of one thousand dollars each, execu-

ted by said Auldridge to Paul McNeel and Joseph Beard, dated October 6, 1869. That the two hundred and seventy five acres known as the "Indian Draft Land" could not be made subject to the debts of McNeel and Beard against Joseph H. Ruckman.

The fourth exception to said report was overruled, and, after overruling the remaining exceptions, the court decreed the amounts so ascertained, with interest, to be paid, and that they were liens upon the lands of said Samuel Auldridge in the manner therein set forth, and, unless they were paid in twenty days, that commissioners therein appointed should advertise the lands of said Samuel Auldridge as therein directed; and from this decree the said Samuel Auldridge applied for and obtained this appeal.

As to the suggestion of the defendant, Samuel Auldridge in his answer to the amended bill "that Rachel McNeel, named as one of the plaintiffs by the will of Paul McNeel, took all of his property, including the debt set up by the plaintiffs, and that said Rachel McNeel had departed this life, and has no personal representative, and until a personal representative is appointed, the suit must abate, so far as these plaintiffs were concerned," I think that the court below acted properly in disregarding it, for the reason that the suit would survive to her co-executor.

The first error assigned by the appellant Samuel Auldridge is that "it was error to decide, as stated in said decree that the deed from John H. Ruckman and wife to Paul McNeel and Joseph Beard, of date March 12, 1870, filed as Exhibit A E with defendant's cross-bill, was, in effect a mortgage, instead of an absolute conveyance, and was treated as such by the parties thereto. Upon the question raised by this assignment of error we look first to the pleadings and find that the plaintiffs in their amended bill allege that "the said John H. Ruckman in the lifetime of plaintiff's testator, to wit, on the 12th day of March, 1870, conveyed to said testator and Joseph Beard certain lands in Pocahontas and Marion counties, West Virginia, and certain franchises in the latter county, in order that they, the said testator and Joseph Beard, might sell and dispose of the same, and apply the proceeds towards the payment of said

debt, an attested copy of which is filed with said Auldridge's cross-bill as Exhibit A E, to which reference is made. Said conveyance, while absolute on its face, was neither tendered nor received as anything other than a mortgage, and was always so treated by the grantees." To this amended bill the said defendant Samuel Auldridge demurred, and, if we consider the case upon said demurrer alone, he must be regarded as admitting said allegation to be true, and that said conveyance was delivered and received as a mortgage; and, if we were not bound to regard this demurrer as conclusive upon the question, and were required to look at the question upon the merits, I think the court was warranted in holding said conveyance to be a mortgage, and not an absolute deed, without looking to the depositions, which were taken before the proper parties were made to the suit.

This is apparent from the face of the deed itself and the letter of July 25, 1870, which is filed with the cross-bill of the defendant Auldridge, which letter bears date shortly after the deed was made to McNeel and Beard, in which letter said McNeel speaks of the property as Ruckman's and says that he never has wished said Auldridge to pay any of John H. Ruckman's debts; and that he and Jo Beard intended going to Fairmont in four or five weeks to investigate Ruckman's affairs there; and "I want you to look at it in this way: If we can make out of Ruckman's property what he owes us, then that pays your debt to us." This language clearly indicates the intention on the part of McNeel to treat the Ruckman property as a mere security for the debt owed him and Beard, and he informs Auldridge that, if they can get their money out of Ruckman's property, then Auldridge's debt to them would be paid; and the conveyance on its face recites the amount of said Ruckman's indebtedness to said McNeel and Beard, and the manner in which the same was created, and declares that, in consideration of said indebtedness, and in order to pay off and discharge said indebtedness to said McNeel and Beard, he conveyed to them the tracts of land therein described. The fact that said McNeel and Beard regarded the property conveyed to them in Marion county

as worth twenty thousand dollars or thirty thousand dollars and the liens against it only amounting to ten thousand dollars, the bonds of the agricultural association and the Pocahontas lands all being conveyed for the purpose of discharging a debt of four thousand four hundred dollars, are facts which do not well accord with the idea that said conveyance was intended as an absolute deed for said property.

In the case of *Lawrence* v. *DuBois*, 16 W. Va. 443, this Court held that, though a deed be absolute on its face, the real nature of the transaction can be proven by parol evidence or surrounding circumstances, and the deed be held to be a mortgage; and that "the following circumstances have great weight in determining that a deed absolute on its face is a mortgage: *First*, where the parties admit that the grantor owes, after the execution of the deed, the consideration of the land to the grantee as a debt; *second*, if the alleged consideration is grossly inadequate." In this immediate connection we may refer again to the letter of said McNeel to Auldridge, in which he says said Marion county lands were very valuable, say worth twenty thousand dollars or thirty thousand dollars, and also says: "If we can make out of Ruckman's property what he owes us, then that pays your debt to us." This letter, it must be remembered, was written on the 25th day of July, 1870, while said deed from Ruckman and wife bears date the 12th day of March, 1870. See, also, *Davis* v. *Demming*, 12 W. Va. 246, p't 8. Syll. See, also, *Vangilder* v. *Hoffman*, 22 W. Va. 2, p't 6, Syll., where this Court held that, "though a deed be absolute on its face, yet, if it be shown by the circumstances surrounding the parties and by their parol declarations that the land was conveyed as a security for money loaned, a court of equity will declare such deed a mortgage; and when, on the parol evidence, it is doubtful whether the conveyance should be regarded by a court of equity as an absolute deed or a mortgage to secure a loan, the courts incline to hold it to be a mortgage." See, also, *Hoffman* v. *Ryan*, 21 W. Va. 415.

In view of these rulings, and under the circumstances of this case, we think the court below committed no error in

holding said deed of conveyance to be a mortgage, and that it did not extinguish the two bonds of one thousand dollars each executed by the defendant Auldridge to said Paul McNeel and Joseph Beard, dated October 6, 1869.

The second error relied upon by the appellant is that the heir of John H. Ruckman has never been legally made a party to the suit. He is, however, designated in the caption of the amended bill as Sidney Ruckman, son and only heir of said John H. Ruckman, and our statute (Code, c. 125, s. 37) provides that "every person designated in the caption of such bill as a defendant shall be a defendant therein without a prayer that he be made such, and shall be required to answer the bill in the same manner and to the same extent as if he were therein called upon to do so; and he appears to have been proceeded against regularly by order of publication. I must therefore hold that said second assignment of error is not well taken.

The third assignment of error is that the notice to lien-holders prescribed by statute was never published previous to said decree. When a plaintiff is proceeding in equity to enforce a judgment-lien, as I understand it, the statute provides (Code, c. 129, s. 7) that "no decree for the distribution of the proceeds of such real estate shall be made until a notice to all persons holding liens on the real estate of the judgment debtor be posted and published under a decree of the court, as thereinafter provided;" giving the form of the notice. This notice I do not understand to be required to be published before a decree can be made directing a sale, but it must be done before a distribution of the proceeds of such real estate; and I do not think the court erred in directing a sale of defendant's lands before publishing said notice:

As to assignment of error No. 4, relied on by the appellant, while it is true that a portion of the judgment obtained against the defendant for the sum of two thousand sixteen dollars and eight cents, which, with interest added to the date of the commissioner's report, amounted to two thousand four hundred eighty six dollars and thirteen cents, was for the purchase-money for a portion of the land sought to be subjected, yet the suit is not brought to enforce the vendor's

lien, but for the purpose of enforcing said judgment-lien; and, while it is the practice to tender a deed where the vendor's lien is sought to be enforced, yet, even in that kind of a case, where the vendor is dead, as in this case, the matter is within the control of the court, who can require the title to be brought in before the property is finally disposed of, and I do not regard the absence of such deed at the time the sale is directed as error for which the cause would be reversed.

As to the next assignment of error, that "the two hundred and seventy five acres known as the 'Indian Draft Land' must be accounted for by McNeel and Beard," it appears in the original record that said land was never in the possession of said McNeel and Beard, nor under their control, but had been sold under a decree of the Court in February, 1869, in a chancery suit of *W. H. McClintic* v. *John H. Ruckman*, which sale was confirmed, and the proceeds applied to a debt due said McClintic, and for that reason said McNeel and Beard could not be required to account for it.

In addition to what has been said above in regard to the first assignment of error, I am of opinion that, even if the conveyance from said John H. Ruckman to said McNeel and Beard was an absolute deed, and not a mortgage, and was intended to be accepted and received in full discharge and satisfaction of the two notes for one thousand dollars each, held by said McNeel and Beard, respectively, the defendant Auldridge could have, by interposing a proper plea, made this defence at law at the time the judgments were rendered; and, having failed to do this, he can not in this collateral manner attack said judgments by setting up said matters in this suit.   See *Haseltine* v. *Brickey*, 16 Gratt. 120, where it is held that, "where a party has had a day in which he could make his defence in the proper forum before a verdict and judgment against him, equity will not entertain him and grant relief after such judgment and verdict, unless in cases of fraud, accident or surprise for some adventitiou circumstances, unmixed with negligence on his part, which shall sufficiently account for the omission to seek its intervention before judgment."   See, also, *Braden* v. *Reitzenberger*, 18 W. Va. 286, where the same principles are announced.

For these reasons we are of opinion that there is no error in the decree complained of for which the same should be reversed. The decree complained of must be affirmed, with costs and damages to the appellees.

AFFIRMED.