# CHARLESTON.

FIRST NAT. BANK OF CEREDO *v.* HUNTINGTON DISTILLING CO. *et al.*

Submitted September 16, 1895—Decided Dec. 7, 1895.

1. EQUITY PRACTICE—PLEADINGS—ANSWERS.

     Answers and other pleadings, except in cases of injunction, can only be filed at rules or in court.

2. JUDGMENT—JUDGMENT CREDITORS—*Res Adjudicata.*

     In a suit in equity to enforce a judgment lien against the real estate of the judgment debtor, the judgment, as between the judgment creditor and other judgment creditors, is conclusive of the justness and amount of the debt.

3. JUDGMENT—IMPEACHMENT OF JUDGMENT—COLLATERAL ATTACK.

     Such judgment, valid on its face, can not be impeached by such other creditor except for fraud: and that can not be done otherwise than in a direct proceeding brought to set it aside on that ground.

4. PLEADING—CORPORATIONS—VARIANCE.

The name of a corporation is not the only means of identity. If some words be added, omitted, or changed in the spelling, in the true name of the corporation, this is not a fatal variance, if there be enough to distinguish it from other corporations, and to show that the corporation suing or being sued was the one intended.

5. PLEADING—CORPORATIONS—PLEA IN ABATEMENT—MISNOMER.

The misnomer of a corporation can not be taken advantage of by plea in abatement; but where formerly pleadable in abatement, the declaration and summons may, on the motion of either party, on affidavit of the right name, be amended by inserting the same therein. Code, c. 125, s. 14.

A case in which these principles are applied.

SIMMS & ENSLOW for appellant, cited 1 Black, Judg. § 171; 7 Leigh, 224; 29 W. Va. 385; 19 Johns. 41; 9 Cow. 437; 70 N. Y. 253; 11 How. 437; 1 Black, Judg. 260; 12 Vt. 617; 33 N. W. Rep. 834, 843; 28 Me. 232; 2 Mod. 308; 52 Me. 481; 1 Black, Judg. § 317; 116 Ind. 35; 15 W. Va. 677; 28 Gratt. 16, 22; 82 Va. 732; 76 Va. 620; 40 W. Va. 224; 89 N. C. 584; 36 Minn. 85; 69 Mo. 281; 10 Ohio St. 584; 30 Mich. 441; 45 Mich. 642.

VINSON & THOMPSON for appellee, cited 34 W. Va. 748; 35 W. Va. 25; Black on Judg. § 213; 4 Gratt. 407; 31 Gratt. 580, 599; 1 Black on Judg. § 441; 18 Howard 404 (side page).

HOLT, PRESIDENT:

On appeal from a decree of the Circuit Court of Cabell county in favor of the appellee against the Huntington Distilling Company, entered on the 10th day of April, 1895, decreeing certain judgments as liens against the real estate of the Huntington Distilling Company, and a sale of such real estate to satisfy the same, but giving the judgment of the First National Bank of Ceredo priority over the judgment of the Huntington National Bank, from which the latter appeals.

In July, 1894, the First National Bank of Ceredo brought its suit in equity against the Huntington Distilling Company, James A. Hughes, and the Huntington National Bank, alleging that on the 22nd day of March, 1894, it recovered a judgment against the defendants the Huntington Distill-

ing Company and James A. Hughes for the sum of one thousand three hundred and sixty four dollars and seventy five cents, and eighteen dollars and seventy five cents costs, and caused execution to issue thereon, which was duly returned "No property found," and it files a copy of its judgment, as an exhibit, which it had caused to be entered on the judgment lien docket; alleges that the distilling company is the owner of certain real estate, describing it; and among other things prays for a sale thereof to satisfy its lien.

On the 13th day of August, 1894, the judge in vacation made an order in the cause referring it to a commissioner, to ascertain, state, and report the real estate—location, quantity, and value—of the distilling company, the number, kind, and amount of the liens thereon, with their order of priority, rental value of the land, *etc.* The commissioner fixed upon, and published due notice of the 29th day of September, 1894, at his office, in the city of Huntington, as the time and place of opening his account, which he completed and —having retained it ten days for inspection of the parties—returned and filed the same on the 31st day of October, 1894.

While the cause was before the commissioner the Huntington National Bank brought in and filed with him its answer, and an answer was also filed before the commissioner purporting to be the answer of the Huntington Distilling Company.

On the 19th day of November, 1894, by leave of the court, the plaintiff filed exceptions to the report, on the ground that the commissioner erred in reporting its judgment a nullity, and the judgment of the Huntington National Bank for four hundred and ninety six dollars and thirty cents as the sole lien. On the 10th day of December, 1894, the Huntington Distilling Company appeared by its president and attorney, and asked leave to file a second answer, and that the one filed before the commissioner be stricken out. The Huntington National Bank objected, and the court took time to consider, and on the 10th day of April, 1895, pronounced the decree appealed from, in which it sustained the motion of the distilling company to strike out

the answer filed with the commissioner, and permitted to be filed the second answer, sustained plaintiff's exception to the commissioner's report, and gave it a decree for its judgment as the first lien in priority, for the judgment of the Huntington National Bank as the second lien, and that the land be sold, *etc.*

The third assignment of error is that relating to striking out the answer filed before the commissioner and permitting the defendant the distilling company to file what is styled its "second answer." A defendant may put his answer in before the commissioner as a statement brought in of his claim or grounds of defense; but there is no law for filing an answer before a commissioner. Answers and other pleadings, except in cases of injunction, can only be filed at rules or in court. *Zell Guano Co.* v. *Heatherly*, 38 W. Va. 400, (18 S. E. 611.)

Supposing, for the present, the plaintiff's judgment to be a valid judgment, did the court err in giving it priority over the judgment of the Huntington National Bank? The judgment of the First National Bank of Ceredo against the Huntington Distilling Company was entered on the 22d day of March, 1894, but the suit was on the *docket of the March term, 1894, which commenced on the 19th day of March. So that it appears the judgment might have been rendered on the first day of the term, and therefore has relation to the first day of the term. But the judgment for the Huntington National Bank was rendered on notice to the 21st day of March, 1894, and judgment on the notice could not have been rendered on the first day of the term. *Coutts* v. *Walker* (1830) 2 Leigh. 268; *Withers* v. *Carter* (1848) 4 Gratt. 407, 418; *Brockenbrough* v. *Brockenbrough* (1879) 31 Gratt. 580, 600; *Dunn's Ex'rs* v. *Renick* 40 W. Va. 349 (22 S. E. 66). This general principle of the common-law, like many others, is of such remote antiquity, and so long recognized without dispute, that the reasons and policy on which it was founded are in a great degree left to conjecture. 1 Black, Judgm. § 441, citing *Coutts* v. *Walker*, 2 Leigh, 268. See 2 Freem. Judgm. § 369.

The remaining and important question is, did the plaintiff have a valid judgment? A duly certified copy of the

record of the judgment, attested by the clerk of the circuit court of Cabell county, was produced and read in evidence as a part of the plaintiff's bill, and the law makes such attested copy evidence in lieu of the original. See Code, 1891, p. 821, c. 130, s. 5; 2 Freem. Judgm. § 407. And such original imports absolute verity, and when read proves itself, and, the judgment being valid on its face, the court determines by inspection the existence of the record and the validity of the judgment. And, as against other creditors, it is conclusive of the justness and amount of the debt, and can not, on a bill to enforce the lien against real estate, be impeached, except for fraud and collusion. *Bensemer* v. *Fell*, 32 W. Va. 15, 25, (12 S. E. 1078). See *McNeel's Ex'rs* v. *Auldridge*, 34 W. Va. 748 (12 S. E. 851); 12 Am. & Eng. Enc. Law, 86; *Candle* v. *Lord*, 2 N. Y. 260; *Vose* v. *Morton*, 4 Cush. 27; *Garland* v. *Rives*, 4 Rand. 282. As to voidable writ or judgment, see *Ambler* v. *Leach*, 15 W. Va. 677; *Cooper* v. *Reynolds*, 10 Wall. 308; 2 Van Fleet, Former Adj. p. 913. These cases and others like them are decisive of these questions. They can not, in this proceeding, between these parties, and in a collateral way, be raised or taken advantage of. They are settled and concluded by the judgment, and the justness and the amount thereof are set at rest. Perchance the distilling company may have creditors who will suffer if the National Bank of Ceredo recovers a judgment against it, but that gives them no right to interfere with or take part in the litigation. See 2 Van Fleet, Former Adj. § 515.

But, suppose it was otherwise; what are the defects and the legal consequences thereof, set up by the judgment creditor competing for priority ? The writ was against the Huntington Distillery Company; whereas the declaration gave the exact name of this corporation, the Huntington Distilling Company. It is true that corporations are mere legal creatures, and must sue and be sued in their true names. *Porter* v. *Nekervis* (1826) 4 Rand. 359; *Society* v. *Digges* (1828) 6 Rand. 165. Yet if some words are added to or omitted in the true name of a corporation, this is not a fatal variance, if there be enough to distinguish the corporation from all others, and to show that the corporation

suing or being sued was intended.   6   Rand. 165, 167.   It is enough if it be *idem re et sensu.*   It need not be *idem syllabis seu verbis.*   Mayor, *etc.*, of Lyme Regis (1613) 10 Coke, 123a; Dr. Ayray's Case, 11 Coke, 18b.   If a corporation be misnamed in a suit against it, it may be pleaded, but only in abatement.   6 Com. Dig. 300; 1 Thomp. Corp. §§ 284, 291.   It is true that the name is peculiarly important, as necessary to the very existence of the corporation.   2 Bac. Abr. 440.   But, although a corporation be immaterial and intangible in its essential part, it is a mistake to suppose that the exact letters or syllables of the name, or the name as a whole, are the only means of identification.   It must have a visible *quasi* embodiment; must have a local habitation, as well as a name; and when found there, doing business like any unincorporated company of men, the officers of the law and others can lay their hands in many ways and for many purposes upon a tangible thing.   Therefore, it is a mistake to suppose it to be a name, and nothing more.   And in this case the two names, even, are not only the same in nature and in sense; but, as a means of designation, are they not practically the same in sound?   There is no variance in the substance.   See Van Fleet, Collat. Attack, § 257.   Here the summons and declaration, taken together, certainly informed Hughes, the president, that the suit was against his company, and so he swears in effect.   See *Insurance Co.* v. *French,* 18 How. 404, 409.   Here the corporation may be to some extent misnamed, but it is correctly described and proceeded against, and its president accepted service of the writ.   1 Thomp. Corp. § 293; 1 Freem. Judgm. § 120b; 1 Black, Judgm. § 213.

But whatever the law may be elsewhere, in this state the question involved in this case is set at rest by the statute. The word "person" includes corporations, if not restricted by the context.   Code, 1891, p. 124, c. 13, s. 17, cl. 9.   No plea in abatement for a misnomer shall be allowed in any action; but in a case wherein, but for this section, a misnomer would have been pleadable in abatement, the declaration and summons may, on the motion of either party, and on the affidavit of the right name, be amended by inserting the same therein.   Code, c. 125, s. 14.   In other

cases, the defendant on whom the process summoning him to answer appears to have been served shall not take advantage of any defect in the writ or return, or any variance in the writ from the declaration, unless the same be pleaded in abatement. And in every such case the court may permit the plaintiff to amend the writ or declaration so as to correct the variance, and permit the return to be amended upon such terms as to it shall seem just. *Id.* s. 15. Service of this writ was accepted by J. A. Hughes, the president of the company. By section 7 of chapter 124 and section 61 of chapter 53, it could be served upon him. Therefore, he could accept service. Section 24 of chapter 54, requiring a corporation by power of attorney to appoint some person residing in the county in this state wherein its business is conducted to accept service on behalf of said corporation, *etc.*, is the dictate of convenience, and manifestly only supplementary. So far as we can see, this is an honest judgment, valid on its face, rendered by the highest court of original general jurisdiction, had on personal service on the president, at its place of creation, residence, and business, and vouched by the record of such court. The policy of the common-law has been, time out of mind, to hold such judgments to be binding and stable, and the matters determined not to be set at large again, or the judgment to be liable to overthrow by collateral attack on any ground whatever. There is no attempt to impeach it for fraud, and that can not be done otherwise than by a direct proceeding brought to set it aside on that ground. *Peninsular Iron Co.* v. *Eells,* 15 C. C. A. 189 (68 Fed. 24).

The decree complained of must be affirmed.