## . CHARLESTON.

### HARVEY v. SHIPE *et al.*

Submitted April 18, 1916.   Decided April 25, 1916.

1. MORTGAGES—*Absolute Deed as Mortgage.*

Where a trust deed debtor after the sale and the purchase of his property by the trust creditor, but before the conveyance to him by the trustee, and with the consent of such purchaser,· procures, a third person to pay to the trustee the amount of the trust debt, and the trustee to make to such third person a deed for the property in place of the purchaser at the trust sale, and upon terms that the debtor may redeem or re-purchase the property from him by paying him the sum so paid or advanced, within a stipulated time, such deed will be construed as a mortgage and not as an absolute and unconditional conveyance.   (p. 249).

2. CREDITOR'S SUIT—*Absolute Deed as Mortgage—Right of Subsequent Creditors.*

Subsequent creditors of such mortgagor after deed so made may in equity subject his equity of redemption to the payment of their lien debts.   (p. 250).

3. MORTGAGES—*Redemption—Effect.*

Where the property originally conveyed to such trustee was owned jointly by the trust debtor and another, as co-tenants,· both joining in the trust deed, to secure the individual debt of the former, and the debtor after sale by the trustee so procures the property to be conveyed to such third person, as stated in the first point of the syllabus, the transaction should be treated as a redemption from the sale by the trustee and the other co-tenant let in to all his original rights as such.   ·(p. 251).

Appeal from Circuit Court, Cabell County.   ·

Suit by H. C. Harvey against William M. Shipe and others. From a decree for plaintiff, defendant S. J. Hyman appeals.

*Reversed and remanded.*

*Neal & Strickling,* for appellant.

*Meek & Renshaw,* for appellee.

MILLER, JUDGE:

The property, a house and lot in Barboursville, Cabell County, which plaintiff seeks to have sold to pay his judgment against defendant W. M. Shipe, is claimed by defendant and appellant, S. J. Hyman, by a deed dated May 1, 1912, executed to him by C. R. Wyatt, trustee.

The theory of the bill, predicated on the specific facts alleged, is that notwithstanding the absolute form of the deed from Wyatt, trustee, to Hyman, it in fact constituted but a mortgage to Hyman, for the repayment to him of a loan or advance to Shipe of three hundred and seventy dollars, and that Shipe in his dealings or transactions with Hyman was endeavoring to hinder, delay and defraud his creditors, and put his property beyond their reach by judicial process.

W. M. Shipe, though a defendant, neither appeared nor answered, and as to him the bill was taken for confessed. Hyman answered denying the relationship of mortgagor and mortgagee, as alleged, and averred that his only contract with Shipe respecting the property was in writing, made on the date of his deed, and that it was a mere option given to Shipe to buy the property from him, at the price paid Wyatt, trustee, through Shipe, of three hundred and seventy dollars, limited to ten days from the date of the contract.

The paper proffered with the answer, and relied on, is rather inconsistent with Hyman's admissions in his answer, and certainly with his testimony as to what the agreement preliminary to the procurement of the deed from Wyatt actually was. Shipe was examined as a witness on Hyman's behalf, and sought by his evidence to support the latter's pretensions, and thereby to protect him in his claim to property worth from two to three thousand dollars, and in which Hyman had invested by the procurement of Shipe but the sum

of three hundred and seventy dollars, all apparently to the injury and detriment of himself, his co-tenant, and his prior creditor Harvey.

The decree appealed from adjudged plaintiff entitled to the relief prayed for, that Hyman's deed from Wyatt, trustee, constituted but a mortgage, first in priority on the property conveyed, and plaintiff's judgment a lien thereon second in priority, fixing the amount of each, and decreeing the same against W. M. Shipe, with interest, costs, etc. It also set aside said deed in so far as it purports to be an unconditional conveyance, and decreed that unless Shipe should pay the liens so adjudged against it within thirty days from the rising of the court the commissioner thereby appointed should sell the property as thereby directed.

Deprived of the descriptive colorings given by defendants to their transactions, the facts substantially alleged and proven are that originally said property was owned jointly by W. M. Shipe and his brother James A. Shipe. On May 6, 1908, the latter and his wife joined with the former, a single man, in a deed of trust to Wyatt, trustee, conveying said property in trust to secure one Azel McCurdy the payment of a note of W. M. Shipe, of three hundred and twenty-five dollars. After this note fell due, at the request of McCurdy, the creditor, Wyatt advertised and sold the property, and McCurdy bid it in for just the amount of his debt. But shortly after the sale, and before anything more was done by Wyatt in closing up the transaction, W. M. Shipe appeared and represented to Wyatt that he did not wish to lose his property which was worth much more than the debt, and wanted to know if he could not arrange to redeem the same. McCurdy was brought in and readily agreed, that if Shipe would arrange to pay him Wyatt might convey the property to Shipe or to any one designated by him. Thereupon Shipe immediately procured Hyman to help him, and who at once gave Shipe his check, payable to Wyatt, trustee, for three hundred and seventy dollars, just the amount necessary to redeem the property from the sale to McCurdy. No other terms of sale were agreed upon between Shipe and Hyman. Shipe's avowed purpose was to save his property, not to lose it to

anyone. Shipe says: "I went to Mr. Hyman and explained to him the situation, that the property was going to be lost if I couldn't raise the amount of money on that day," which was "after the sale." He also says that Hyman gave him his check, which he carried to Wyatt, and obtained the deed to Hyman as already stated. And Hyman swears with reference to this deed: "I took the deed for the property to secure my $370.20, knowing that I could not lose by the transaction."

This evidence is not consistent with the theory of the defendants that the pretended option contract represented the real transaction, any more than that the deed itself did so. Moreover, declarations of both Hyman and Shipe made after the ten days mentioned in the option contract had expired are proven by Wyatt and other witnesses. It is argued that Hyman could not lose title by such declarations if made, and that what Shipe may have declared subsequently to the deed was not binding on Hyman. But Hyman used Shipe to prove his defense, and his inconsistent statements made subsequently to the transaction were competent to go in evidence as rebuttal, and evidence of his own subsequent declarations was competent to impeach his testimony.

The record leaves not the slightest doubt as to the real intention of the parties, nor as to what the real contract between Shipe and Hyman, was. It is unnecessary to further recite the pleadings or evidence. If we had any doubt as to the facts the practice obtaining here would not justify us in disturbing the findings of the circuit court upon which its decree was based.

A number of legal propositions are advanced and relied on by counsel for Hyman. First, that when McCurdy, the purchaser at the trustee's sale, accepted the purchase money and the deed as directed was made by Wyatt, trustee, to Hyman, the latter became the absolute owner of the property, upon the principles of *Crawford* v. *Workman,* 64 W. Va. 19; *Wade* v. *McDougle,* 59 W. Va. 113; 39 Cyc. 49. This assumption ignores the relationship of Shipe to the subject matter of the contract and the part which he took in the transaction. He was deed of trust debtor and was endeavoring to save or re-

deem his property. It was through his procurement that the deed was made to Hyman, and Hyman, as we have seen, took it as security for his advance or loan to or on account of Shipe. But counsel says the land had already been sold and Shipe's equity of redemption foreclosed, which left him out of consideration. But this cannot be so. True the sale had been made, but not closed up. The trustee with the consent of McCurdy, the creditor and purchaser, agreed that Shipe might still redeem the property; it had not passed beyond Shipe's ability to redeem it, and it was for himself and not for Hyman that he was acting in procuring the deed to be made to Hyman. Counsel appreciate the fact that to bring them within the principles of the cases cited and relied on, it is necessary to eliminate Shipe and his equities, for under no other conditions could Hyman deprive him or his creditors of their right of redemption. We are controlled, not by the cases cited by appellant's counsel, but rather by *Ruckman* v. *Cox*, 63 W. Va. 74, 76, and the cases cited therein, which would render Hyman, taking the land for redemption by Shipe, trustee of an express trust. In cases like this the rule is different from those involving transactions between strangers to the property. In cases like this the statute of frauds is also inapplicable.

It is well settled law in this State that where a deed, though absolute in form, is taken as security for a loan or for money advanced in the purchase of property, and under facts and circumstances like those involved here, it will be treated according to the intention of the parties as a mortgage, and enforced as such. *Thacker* v. *Morris,* 52 W. Va. 220; *Davis* v. *Demming,* 12 W. Va. 246; and also that the real transaction may be shown by parol evidence or the surrounding circumstances. *Shank* v. *Groff,* 43 W. Va. 337; *McNeel* v. *Auldridge,* 34 W. Va. 748. And in *Gilchrist* v. *Beswick,* 33 W. Va. 168, it was said that where the parol evidence leaves the question in doubt, a court of equity will incline to hold the deed a mortgage, following the case of *Vangilder* v. *Hoffman,* 22 W. Va. 1.

That the deed from Wyatt, trustee, should be treated as a mortgage, therefore, seems clear. It is well settled also that creditors of such mortgagee may of right in equity subject

the equity of redemption to the payment of their debts. *Wise v. Taylor*, 44 W. Va. 492; *Laidley* v. *Hinchman*, 3 W. Va. 423; *Michaux* v. *Brown*, 10 Grat. 612.

The foregoing conclusions settle the principles of the case, and would lead perhaps to an affirmance of the decree, with only a modification as to the half interest of James A. Shipe in the property decreed to be sold. While the whole estate therein is liable for the debt of Hyman, because originally covered by the deed of trust executed by both W. M. and James A. Shipe, the latter's interest therein is apparently not liable for Harvey's judgment. The redemption of the property by W. M. Shipe, a co-tenant, from the sale under the trust to Wyatt, in the manner stated, and the creation of a new mortgage on the property, would of course enure to the benefit of James A. Shipe. Both debts are apparently the individual debts of W. M. Shipe, and would not James A. Shipe, surety, in equity, be entitled to redeem or to have both debts and in their order of priority, first paid out of the interest of his brother in the proceeds of the sale of the property when sold? We think so. But James A. Shipe is not a party to the suit, as we think he should be, and our conclusion is that before there can be a final decree of sale disposing of the whole case James A. Shipe should be brought into the suit and given his day in court.

We are, therefore, of opinion to reverse the decree and remand the cause for further proceedings to be had therein in accordance with the principles herein enunciated and further according to rules and principles governing courts of equity.

*Reversed and remanded.*