# 𝕮𝖍𝖆𝖗𝖑𝖊𝖘𝖙𝖔𝖜𝖓.

BAKER *et al.* v. RINEHARD, MAYER & CO. *et al.*

Decided September 10, 1877.

1877.
August Term.

1. A court of equity ought not to grant an injunction, to stay the sale of personal property, levied on by a sheriff by virtue of an execution, which property is owned by a third party, when the property is not from its nature of peculiar value to the owner, and when its sale will not obviously greatly injure the owner by the consequential damages it would produce. (See *Walker* v. *Hunt*, 2 W. Va. 491.

2. Quære—Would the fact that the sale would obviously greatly injure the owner by the consequential damages it would produce, alone justify the granting of an injunction to such sale?

3. If the property is owned by several different parties, not jointly but severally, each owning a separate part of the property by titles derived from different parties, the owners in such case can not unite in a bill to enjoin the sale. Such a bill should be dismissed on demurrer as multifarious.

Appeal from and *supersedeas* to a decree of the circuit court of Ritchie county, rendered on the 27th day of April 1877, in a cause in chancery, in said court then pending, wherein Tillman H. Baker and others, were plaintiffs, and Rinehard, Mayer & Co., were defendants, granted upon the petition of said plaintiffs.

Hon. James M. Jackson, Judge of the fifth judicial circuit rendered the decree complained of.

The following statement of the case was prepared by GREEN, PRESIDENT, who delivered the opinion of the Court:

Tillman H. Baker, W. S. Baker and A. S. Baker, in

1877.
August Term.

Baker *et al.*
v.
Rinehard,
Mayer & Co.
*et al.*

January 1877, filed their bill in the circuit court of Ritchie county, alleging that the defendants Rinehard, Mayer & Co. had issued an execution on a judgment against T. D. Baker and W. B. Baker for $313.16 with interest from October 16, 1876 and $9.70 costs, which was levied on nine head of yearlings, four head of calves, one horse and two hogs, the property of one of the plaintiffs, Tillman H. Baker; and on five head of yearlings, one mare and colt, eleven head of sheep and one calf, the property of another of the plaintiffs, W. S. Baker; and one mare and one cow, the property of the female plaintiff A. S. Baker; that the sheriff, being notified that it was their property, required of the plaintiffs in the execution an indemnifying bond, which was given; and thereupon the sheriff advertised said property for sale.

The bill further alleges, that the return day of the exetion had passed, yet it had not been returned to the office, whence the execution issued, and no *venditioni exponas* had issued. The plaintiffs assert in general language, that they had no complete and adequate remedy at law; and then in direct contradiction with a charge previously made in the bill, charge that no indemnifying bond had been given by the plaintiff's to the sheriff; and they say in general terms, that if such property is permitted to be sold, they will sustain irreparable injury; and the bill prays, that the plaintiffs in said exetion and the sheriff, who levied it, may be made defendants, and may be enjoined from selling said property; and for general relief. Depositions were taken by the complainants to prove the ownership of the property by them severally, as alleged in the bill; and the defendants demurred to the bill, and filed answers, which were replied to generally. On the 27th day of April 1877 the Court by its decree sustained the demurrer, dissolved the injunction and dismissed the bill, and decreed that the defendants Rinehard, Mayer & Co. recover of the complainants their costs.

1877.
August Term.

Baker *et al.*
v.
Rinehard,
Mayer & Co.
*et al.*

*R. S. Blair*, for appellants :

The following authorities are relied on, to show the right to enjoin the sale of personal property under an execution, where the party or parties claim as *bona fide* owners, and not as incumbrancers merely: *Walker* v. *Hunt*, 2 W. Va. 491; *McFarland et al* v. *Dilley et al.* 5 W. Va. 136; *Lewis* v. *Spencer*, 7 W. Va. 691; *Wilson & Trent* v. *Butler et al.*, 3 Munf. 564, 565; 2d vol. Tucker's Commentaries 469 (top page) ; *Watson* v. *Sutherland*, 5 Wall. 74; *Boyer et al.* v. *Creigh et al.*, 3 Rand. 31; *Scott et ux.* v. *Holliday*, 5 Munf. 103; *Sampson* v. *Brice*, *ib.* Munf. 175; *Crawford* v. *Thurmond et al.*, 3 Leigh 85.

*Scott & Cole*, for appellees :

1. A court of equity will not interfere by injunction, on application of the professed owner, to inhibit the sale of personal property taken on execution unless it be shown that the property is of peculiar value, or that for some reason the party cannot get adequate compensation for the wrong, complained of, in damages in an action at law: 2 Rob. (old) Pr. 224, 225; *Randolph* v. *Randolph*, 3 Munf. 99; *Allen* v. *Freeland*, 3 Rand. 170; *Wilson & French* v. *Butler*, 3 Munf. 559 ; *Bowyer, &c.* v. *Creigh*, 3 Rand. 25; *Randolph* v. *Randolph*, 6 Rand. 194; *Walker* v. *Hunt*, 2 W. Va. 491; *Watson* v. *Sutherland*, 5 Wall. 74; *DuPre* v. *Williams*, 5 Jones Eq. 96; *Lewis* v. *Levy*, 16 Md. 85; *Freeland* v. *Reynolds*, 16 Md. 415; Hilliard on Injunctions, 232, 233, 234, 235.

2. While the granting of special injunctions in many cases is indispensable for the purposes of social justice, it is attended with no small danger, both from its summary nature and its liability to abuse, and ought to be guarded with extreme caution: 2 Story's Eq. Jur., §959 (*b.*) and note; *Fenly* v. *Wanzer*, 5 How. (U. S.) 141.

3. Several complainants cannot assert separate titles to different pieces, or articles of property, owned by them severally, by the same bill. Such a bill is multifarious:

2 Rob. (old) Pr. 278, 279, and authorities there cited; Story's Eq. Pl. §§271, 271 b to 280.

1877.
August Term.

Baker *et al.*
v.
Blanchard,
Mayer & Co.
et al.

GREEN, PRESIDENT, delivered the opinion of the Court:

The question arising in this cause is, whether on such allegations, as are made in the bill, an injunction can be properly sought by the owners of personal property to prevent its sale by a sheriff, who has levied upon it an execution, issued against a third party having no interest in the property. In Virginia the decisions seem to establish the principle : " That a court of equity should not interfere, to prevent a creditor from seizing and selling under his execution any property, which he may think liable to it : unless *the property be of such a character* that the owner cannot be fully compensated by the verdict of a jury giving him its fair market value ; and that this can only be, where the property is of *such a nature* that it may fairly be supposed to have a *peculiar and additional value in the estimation of the owner,* the *pretium affectionis.* " 2 Rob. Pr. (old) 225 ; see *Randolph* v. *Randolph &c.,* 3 Munf. 99 ; *Wilson & French* v. *Butler &c.,* 3 Munf. 559 ; *Scott et ux.* v. *Halliday,* 5 Munf. 103 ; *Sampson* v. *Bryce,* 5 Munf. 175 ; *Bowyer &c.* v. *Creigh &c.,* 3 Rand. 25 ; *Allen* v. *Freeland,* 3 Rand. 175 ; *Randolph* v. *Randolph,* 6 Rand. 198 ; *Sims* v. *Harrison,* 4 Leigh 346 ; *Kelly* v. *Scott,* 5 Gratt. 479 ; *Summers &c.* v. *Bean,* 13 Gratt. 417. In some of these cases the court rendered no opinion ; in others the language used was loose or more general, from which, if the case, in which the language is used, is not particularly examined, it might be inferred, that a court of equity in such cases would interpose when, from the nature of the case, the remedy at law was incomplete, without reference to the peculiar nature of the property. But if the cases themselves are examined, it will appear that the law as laid down by Robinson in his Practice, as quoted above, is fairly inferrable from all the Virginia decisions, and is clearly expressed and laid down in some of them. Bearing in

1877
August Term.

Baker *et al.*
v.
Rinehard,
Mayer & Co.
*et al.*

mind that the Virginia court of appeals held, that slaves had in the estimation of the owners a peculiar value, unless the contrary appeared, (*Randolph* v. *Randolph,* 6 Rand. 194), it will be obvious that the court of appeals of Virginia, in none of the cases above cited, has ever gone further than to hold, that a court of equity would interfere to prevent a creditor from seizing and selling under execution the property of a third party, if such property was of a nature, that it could fairly be supposed to have a peculiar value in the estimation of the owner, and not otherwise. Judge Tucker, in his Commentaries vol. 2, p. 473, admits that the Virginia decisions are as above stated, but says: "To the decisions above cited we are compelled to bow in submission, and doubtless the principle of them is in general correct; yet if injunctions are granted on the ground of irremediable mischief to the party, the justice of refusing it is not perceived in many cases, which would be excluded by these decisions. Thus, if on an execution against it, the only horse of B., a poor man, is taken from the plough, it is a mockery of justice to say to him, 'you may sue for damages,' when a lawsuit may be beyond his means, and even these means are diminished by the wrong; and this, although he has *possession,* and must give ample security for the property if he fails to prove his title to it." Judge Tucker, while admitting that the Virginia decisions did not justify such conclusion, thought that, as a jury could not take into consideration the collateral or consequential damages resulting to the owner from the taking of such property, that therefore, a court of equity ought to interfere to prevent such collateral or consequential damages arising; and his view received a certain amount of countenance from the decision of the supreme court of the United States in the case of *Watson* v. *Sutherland,* 5 Wall. 74. In that case, an injunction was sustained; Sutherland alleging in his bill, that the defendants in the chancery case had levied a *fieri facias,* issued against a third party, on his stock of goods; and he asked an injunction to the sale to prevent

1877.
August Term.

Baker et al.
v.
Rinehard,
Mayer & Co.
et al.

irreparable injury to himself; and, as showing that such irreparable injury would result, he states in his bill " that he was the *bona fide* owner of the stock of goods, which were valuable, and purchased for the business of the current season, and not all paid for; that his only means of payment were through his sales; that he was a young man, recently engaged on his own account in merchandising, and had succeeded in establishing a profitable trade; and if his store was closed, or goods taken from him, or their sale even long delayed, he would not only be rendered insolvent, but his credit destroyed, his business wholly broken up, and his prospects in life blasted." The court says that " loss of trade, destruction of credit, and failure of business prospects, are collateral and consequential damages, which it is claimed would result from the trespass, but for which compensation cannot be awarded in a trial at law. The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case must depend altogether upon the character of the case, as disclosed in the pleadings. In the case we are considering, it is very clear that the remedy in equity would alone furnish relief; and that the ends of justice required this injunction to be issued."

In a very similar case, where the levy was upon a stock of goods, and where the complainant alleged in his bill, that " a sale of the goods would result in great injury to his business and credit," the Court of Appeals of West Virginia sustained an injunction, *Walker* v. *Hunt*, 2 W. Va. 491. In the case of *McFarland & McNeer* v. *Dilly & Everett*, 5 W. Va. 135, the Court sustained the jurisdiction of a court of equity to enjoin a sale of the personal property of a third party, levied on by a sheriff. But the case throws no light on the question under discussion; as the bill alleged, that by collusion between the plaintiff in the execution and his son-in-law, the son-in-law confessed a judgment to the plaintiff in the execution, which by an understanding between him and

1877.
August Term.

Baker et al.
v.
Rinehard,
Mayer & Co.
et al.

his son-in-law was levied on the property which the son-in-law, immediately after the judgment, was thus fraudulently confessed, sold to the complainant. The fraud practiced on the complainant, it alleged, gave the court of equity jurisdiction in that case. These are the only cases, in which the Court of Appeals of West Virginia has sustained the jurisdiction of a court of equity, to grant an injunction to prevent the sale of personal property under the levy of an execution. In the case of *Lewis* v. *Spencer*, 7 W. Va. 689, the Court of Appeals of West Virginia sustained an injunction to a sale of a horse by a sheriff for taxes, the taxes having been fully paid. But, Judge Paull, in delivering the opinion, distinguishes this case from the sales of property under executions, and says : " The judicial history of Virginia and of this State fails, so far as we are aware, to present any case, wherein the question here presented has been adjudicated." He seems to have considered, that the sheriff's having in that case no right to sell any property distinguished it from the cases where the sheriff had in his hands an unpaid execution ; and he seems in part to have relied upon the Acts of 1871, chapter 158, section 2, which provides that no court should have jurisdiction to enjoin the sale of any real estate delinquent for taxes : unless it be averred in in the bill, that all taxes and levies, which have been made and assessed thereon, have been fully paid. In the case of *Douglass & McKinney* v. *The Town of Harrisville*, 9 W. Va. 162, the town of Harrisville assessed against the plaintiffs a sum of money, to have a sidewalk adjoining their lots, which was placed in the hands of an officer, who levied it on the plaintiffs buggy; they sought to enjoin it on the sole ground, that the assessment was illegal and void; and this Court held that such injunction ought not to be awarded, the plaintiffs having a complete remedy at law. It is unnecessary in this case to decide, whether an injunction should be awarded to prevent the sale of personal property under

1877.
August Term.

Baker *et al.*
v.
Rinehard,
Mayer & Co.
*et al.*

execution, which in its nature had no peculiar value in the estimation of the owner, where the consequential or collateral damages to the owner by the sale of the property, alleged to have been illegally levied on, were ruinous in their consequences; for however variant the decisions above referred to may be, none of them hold, that where the collateral or consequential damages resulting from the sale of personal property of no peculiar value are trifling, as in this case, that a court of equity ought to interfere, to prevent a sale, by injunction. The law in such case furnishes what the law books call an adequate and complete remedy; even though in a case where the consequential damages were very great, such remedy at law might be properly considered by a court of equity as incomplete and inadequate, and as furnishing ground for an injunction. By an adequate and complete remedy is not meant in any case a remedy which fully compensates the injured party. For if this be the meaning no court either of law or equity ever furnishes a complete and adequate remedy, except perhaps in the few cases where vindictive damages are permitted to be given. With this exception, the remedy, whether legal or equitable, is never commensurate with the injury. To say so would be to attribute to legal or equitable relief a degree of perfection, which it is very far from possessing. Chief Justice Marshall says in *Short* v. *Skipwith*, 1 Brock. 103, 115: "It would be going a great way to subject a debtor, who promised to pay a debt, to *all the loss* consequent on his failure to fulfill his promise. The general policy of the law does not admit of such strictness; and though in morals a man may charge himself as the cause of any loss occasioned by a breach of his engagement, yet interest is generally considered as compensation, which must content the injured." Where there is no element of fraud, willful negligence or malice, the compensation recovered in damages or allowed in a suit in equity, is the direct pecuniary damages, and the costs of the suit. No indirect loss is ac-

1877.
August Term.

Baker et al.
v.
Rinehard,
Mayer & Co.
et al.

counted for; no allowance is made for mental suffering, or for the time actually consumed in prosecuting or defending the suit; or for fees actually paid counsel in the case. See Sedgwick on Damages, p. 37. Take as an example, a suit in equity brought to enforce the specific performance of a contract to sell a house, the court entertains the suit, because the common law action, for damages for the breach of the contract, is inadequate and incomplete. Yet the equity court in such a case, utterly fails to furnish a remedy commensurate with the injury. All that a court of equity does in such a case, is to compel the defendant to comply with his contract by conveying the land, and the plaintiff recovers the legal costs of the suit. The plaintiff may have spent months of time in taking depositions; he may have paid large sums of money to his counsel in the cause; he may have been greatly annoyed and suffered much mentally; he may have suffered indirectly by his inability to get possession of the house, it may be to its full value, by having the business which he intended to carry on in the house greatly injured; yet for all these things a court of equity furnishes him no compensation. Yet this remedy, in its legal and technical sense, is called an adequate and complete remedy. In the present case, the plaintiffs could recover, by a common law action, the market value of the stock taken by the sheriff, and the costs of suit; and this ought, in the legal meaning of the phrase, as above shown, to be regarded as a complete and adequate remedy; and no injunction should be awarded, though the plaintiff in the chancery suit might by the sale of this stock by the sheriff have suffered a trifling amount of indirect damages, which they could not be compensated for by a common law suit. Had they been permitted to stay the action of the sheriff, and litigate the rights of property in this stock in the chancery suit, they would still have suffered indirect damages, for which the chancellor could not have compensated them; such as loss of time in attending to the suit; counsel fees paid in the prosecution of the suit; and

annoyance producing mental suffering. These indirect damages may well have exceeded the losses they would have sustained, and for which they could not be compensated by a common law suit. While no injustice or injury is done by refusing an injunction in such a case as the present, great wrong is done by awarding an injunction. If an injunction is allowed in such a case, and the property is restored to the debtor by an order of the court, upon injunction bond given, years may wear away in the slow march of chancery causes; the matter in controversy is tried by a *court* upon *depositions*, instead of by a jury on *viva voce* testimony; and if at last the creditor succeeds, he may find the property dissipated, and may have a third suit to bring on the injunction bond. Suppose that the pretense that the property belongs to the complainants in the chancery cause is wholly unfounded, and their claim grossly fraudulent, the creditor levies on the property and sells, and there is an end of it. For the parties to the fraud, finding their property gone and purposes thwarted, do not venture to sue on the bond of indemnity, but suffer the case to go into equity, and no matter how gross the fraud, the defendants must answer; evidence must be taken; the order dissolving the injunction may be appealed from; and when the cause is finally decided, the property may be gone, and a new suit may have to be brought on the injunction bond, and time, which is all the party wanted, has thus been procured, and the ends of justice have, to a large extent, been defeated. See Judge Carr's opinion in *Bowyer, &c.* v. *Creigh, &c.*, 3 Rand. 30. I have thus far considered the case, as if the only remedy of the claimant of the property was a suit for damages on the indemnifying bonds. But our statute has afforded him a remedy in the common law courts, much more efficient—one indeed much more complete than any a court of chancery could prossibly afford. The 6th section of chapter 107 of the Code of West Virginia, p. 568, provides that the claimant of such property may, by giving a suspending bond, stop the sale thereof;

1877.
August Term.

Baker *et al.*
v.
Rinehard,
Mayer & Co.
*et al.*

1877.
August Term.

Baker *et al.*
v.
Rinehard,
Mayer & Co.
*et al.*

and the controversy is then promptly decided by the verdict of a jury ; and the 7th section of same act provides, that he may remain in the possession of the property pending the controversy by giving a forthcoming bond. These bonds can be as readily given by the claimant of the property as an injunction bond. And all that the claimant can ask is thus afforded him without unnecessary costs and delay being imposed on the creditor, who is seeking to enforce his execution. I cannot conceive, since this statute has been passed, any case in which a *bona fide* claimant of property of any description, which has been wrongfully levied on, and an indemnifying bond given, should desire to obtain an injunction to prevent the sale. The sale in all such cases may by this statute be as effectually stopped, and the controversy be much more promptly and satisfactorily settled. The court however in *Walker* v. *Hunt*, 2 W. Va. 491, decided that this statute did not prevent a claimant of property, levied upon, from resorting to a court of equity to obtain an injunction to the sale in any case, in which he would have had such right before the passage of this statute. It is certainly a general rule that, if the courts of equity originally obtained and exercised jurisdiction, the conferring of jurisdiction on the courts of common law, by statute, does not, unless the statute so declares, take away the jurisdiction of a court of equity. See 1 Story's Eq. §80. Whether there are any exceptions to this general rule it is unnecessary here to inquire, as we have seen that independent of the statute, a court of equity in this particular case has no jurisdiction. Where a case arises in which the court would otherwise have had jurisdiction, it will be then proper time to consider whether the jurisdiction has been affected by the passage of this act. I will remark however, that though this question was decided in the case of *Walker* v. *Hunt*, 2 W. Va. 491, yet it is obvious, that the court in that case misapprehended the question, and really never gave it any consideration ; for Judge Maxwell in pronouncing the opin-

1877.
August Term.

Baker *et al.*
v.
Rinehard,
Mayer & Co.
*et al.*

ion of the Court simply says that, "the giving of the indemnifying bond, as provided by the fourth section of the act, did not affect the jurisdiction of a court of equity in such case," but does not say a word about the effect on the jurisdiction of a court of equity, that the right to give a suspending bond, and forthcoming bond, under the sixth and seventh sections of the act, would have on the jurisdiction of a court of equity.

There is also another fatal error in the bill in this case. It is multifarious, and should for that reason have been dismissed on demurrer. The plaintiffs, owned, as the bill alleges, the property levied on, not jointly, but each of the plaintiffs owned severally different articles of the property levied on. Their titles to this property are not alleged to have been derived even from the same source. Their claims appear by the bill to have been separate and distinct; they could not bring one suit; and the demurrer to the bill should therefore have been sustained: See *Harrison* v. *Hogg*, 2 Ves. Jr. 323; *Boyd* v. *Hoyt*, 5 Paige 65; *Yeaton* v. *Lenox*, 8 Peters 128.

The decree of the circuit court of Ritchie county, of the 27th day of April 1877, must be affirmed, and the appellee must recover of the appellants their costs expended in this court, and $30.0C damages.

DECREE AFFIRMED.