# CHARLESTON.

## SHANK *v.* GROFF *et al.*

Submitted February 3, 1897—Decided April 17, 1897.

1. DEEDS—*Mortgage—Evidence.*
    Though a deed be absolute on its face, the real nature of the transaction may be shown by parol evidence or surrounding circumstances, and the deed be held to be a mortgage. (p. 345.)

2. DEEDS—*Mortgage—Assignment—Evidence.*
    Where a deed absolute on its face is shown by evidence and surrounding circumstances to be a mortgage, and the grantor, in order to redeem the property, borrows the money from a third party, and the grantee in said deed, by indorsement thereon, assigns the deed to the grantor, and the grantor, by like assignment, transfers the property to said third party, the deed may still be shown by evidence and the circumstances to be a mortgage to secure said third party the money advanced by him to said grantor. (p. 346.)

3. ASSIGNMENT—*Agreement in Writing—Grantor's Right of Redemption.*
    A written agreement entered into, between said parties on

the day said assignment was made, providing that if said third party had an offer for his interest in said property he was to give said grantor notice, and allow him to take the property at the price offered, if accepted within three months prescribed in the agreement, while it may confer upon said third party a power to sell the property, under the terms of said agreement, does not deprive the grantor of the right to redeem the property. (p. 349.)

Appeal from Circuit Court, Grant county.

Bill by Samuel B. Shank against Samuel Groff and others. From the decree plaintiff appeals.

*Reversed.*

J. N. McMULLAN, L. J. FORMAN, and F. M. REYNOLDS, for appellant.

GEORGE BAYLOR, for appellees.

ENGLISH, PRESIDENT:

On the first Monday in February, 1893, Samuel B. Shank filed his bill in the Circuit Court of Grant county against Samuel Groff and others, praying that the court might cancel, set aside, and declare null and void two deeds admitted to record on January 23, 1893, in the county court of said county, from Lewis S. Hartman and wife to William B. Given, bearing date the 20th September, 1892, and from Samuel Groff and wife and Mary Keneagy to said Lewis S. Hartman, bearing date on the 8th of May, 1889, copies of which deeds were filed with the bill, and to refer the cause to a commissioner to ascertain and report what was due to Samuel Groff and the Henry Keneagy heirs upon the William Henning interest in said land, to whom due, and in what proportion, and to compel, upon the payment of the money due as stated in the bill, the defendant Samuel Groff and the heirs of Henry Keneagy, deceased, or some one for them, to convey to the plaintiff the legal title to the interest of William Henning in the undivided half of five-eighteenths of the tracts of land in the bill mentioned and described in the deed from Robert W. Stone and wife to Rhodes; and that the said John H. Keneagy, as guardian, might be restrained from proceeding to sell the infant party's interest in the suit brought by him, and now pending in the court.

The pleadings in this case present for consideration and solution the proper construction and legal interpretation of a certain deed of conveyance from William Henning to Samuel Groff and Henry Keneagy for a portion of the land in the bill mentioned and described, a copy of which is therewith exhibited. The question arises and results from the following transactions, which are set forth in the bill and amended bill, to wit: William Henning became the owner by reason of a conveyance from R. W. Stone and wife of a portion of two certain tracts of land lying in said county containing in the aggregate, nine thousand three hundred and eighteen and three-eighths acres. On the 5th day of March, 1881, said William Henning, in consideration of six thousand two hundred and twelve dollars and thirty-five cents, conveyed the legal title to said portion of the land to Amos Herr; and the bill charges: That, while said deed appears to convey the fee-simple title of said William Henning in said portion of said land, yet in fact said conveyance was made only for the purpose of securing to said Amos Herr the said sum of six thousand two hundred and twelve dollars and thirty-five cents, the consideration mentioned in said deed; and the understanding between the parties to said deed was that whenever said Henning could pay Herr the amount of said consideration, accrued interest, taxes, and expenses connected with the management of said interest in said land, then said Herr was to reconvey the legal title thereto to the said William Henning. That in pursuance of said understanding, on the 31st day of March, 1884, said Henning arranged, through the defendant Samuel Groff, and one Henry Keneagy, to pay to said Herr the amount he held against the said interest which had been conveyed to him by said Henning and wife. As soon as said Henning had completed arrangements, and had paid off to said Herr the amount he held against said interest, which on March 31, 1884, was the sum of eight thousand and two dollars and twenty-one cents, then said Herr and wife, on the same deed that Henning and wife had executed to him as aforesaid, indorsed an assignment or transfer of said interest back to said Henning, by which said Herr and wife transferred and set over to the said William Henning all their right, title, and interest in said deed, and in the lands therein conveyed,

which assignment and transfer were duly recorded. That, on the same day the said Henning received said assignment from said Herr and wife, the said Henning and wife on the same deed that the Herr assignment was indorsed, assigned to Samuel Groff and Henry Keneagy all their interest in said deed and properties and lands thereby conveyed, in consideration of twelve thousand dollars, which assignment was also recorded; and the bill charges that said assignment by William Henning to Samuel Groff and Henry Keneagy was not made as the absolute conveyance of the fee-simple right and title of the said William Henning in his interest in said land unto Samuel Groff and Henry Keneagy, but said conveyance was made only for the purpose of securing to Samuel Groff and Henry Keneagy the amount of twelve thousand dollars, the consideration mentioned therein, and whatever interest might accrue, and the taxes that said Groff and Keneagy should have to pay upon the interest aforesaid.

On the same day the assignment and transfer last above mentioned were made, William Henning, Samuel Groff, and Henry Keneagy entered into a written agreement declaring the conditions of the trust upon which said Groff and Keneagy were to hold the interest of William Henning in said land, which agreement was signed and acknowledged by all the parties, and, together with said assignment, was delivered to H. M. North, attorney for Samuel Groff and Henry Keneagy, which agreement was duly recorded. The trust, as declared in said agreement, is as follows: That said Groff and Keneagy, when they sell and convey the undivided half of five-eighteenths of said tract of land, will deduct from the purchase money the sum of twelve thousand dollars, and interest thereon from the date thereof, and all taxes that shall have been paid by them to the time of sale, and that they will then pay over to said Henning the half of what remains of said purchase money, after making the said deductions. It was further agreed that at any time said Rhodes, Shank, and Herr agree to sell their interest in said land, in order that the same might be sold as a whole, Groff and Keneagy should sell their interest at the same time, to the same party or parties, for the same consideration, in proportion to their

respective interest, but they should not be required to sell their interests for a sum less than the amount invested by them, with interest and taxes. It was further agreed that Groff and Keneagy should not sell their interest in said land to any party or parties, other than parties who might buy the whole tract of nine thousand, three hundred and eighteen and three-eighths acres, without first giving to said Henning notice of any proposed sale, and the privilege for any reasonable time thereafter to buy said land at such price as they might be willing to sell for to other persons, which reasonable time should not exceed three months. This agreement should include and be applicable to the heirs, executors, administrators, and assigns of said parties. If said Henning should decide to buy said interest of said Groff and Keneagy at a price they offer to accept from other parties, the terms of sale should be the same to him as offered to other parties, and he might deduct any amount of money that he (Henning) might be entitled to under that agreement. The plaintiff charges that the true intent and purpose of said agreement was to show that said William Henning held the equity of redemption of his interest in said land, and that he had a right to demand the conveyance of the legal title thereto from Groff and Keneagy whenever he repaid to them the amount of money he had advanced for him; and that if a sale of said interest should be demanded by Groff and Keneagy, before Henning could redeem the same, Henning should have reasonable notice of the attempt to sell said interest, and that he should have the refusal of the same, and it was incumbent upon Groff and Keneagy to act in the utmost good faith with Henning to carry into effect the true intent and purpose of said declaration of trust.

Without following consecutively the allegations of the bills and amended bills, or the answers that put those allegations in issue, I regard it as only necessary, for the purposes of this opinion, to call attention to certain prominent facts which must have a controlling influence in reaching a proper conclusion in passing upon the errors assigned and claimed to exist in the decree complained of. Among these facts may be mentioned, first, the execution of the deed bearing date the 5th day of March, 1881, from William Henning to Amos Herr (which is claimed to have

been a mortgage); the assignment of said deed or mortgage from Amos Herr and wife to William Henning, dated March 31, 1884, which assignment was indorsed upon said deed; the assignment by William Henning and wife to Samuel Groff and Henry Keneagy of all of his right, title, and interest in said deed on the same day, which assignment was also indorsed on said deed; the agreement or declaration of trust dated the same day between Groff, Keneagy, and Henning, which has been above recited; the deed dated April 15, 1891, from William Henning to the plaintiff, Samuel B. Shank; the contract between Samuel Groff and the heirs of Henry Keneagy, deceased, and William B. Given, to sell him Henning's interest in said tract of land; the registered letter written November 20, 1888, by Keneagy and Groff to Henning, informing him that they were offered sixteen thousand dollars, payable April 1, 1889, for their interest in the West Virginia land, which offer they would accept, unless, in accordance with the terms of said agreement, he wished to take it, requesting him to regard that letter as notice to him, and requesting him to let them know within three months whether he wished to take the property; the reply to said letter, dated December 6, 1888, written by said Henning, in which he acknowledged the receipt of said registered letter, and states that, in accordance with their agreement, he would take the property.

Depositions were taken by both plaintiff and defendants in the cause, and on the 7th of March, 1896, a decree was rendered therein, holding that a deed executed by Samuel Groff and wife and Mary Keneagy, devisee of Henry Keneagy, deceased, to Lewis S. Hartman, and the deed of Lewis S. Hartman, and Mary, his wife, to William B. Given, in the bill and amended bills mentioned, were null and void; and that the transaction between William Henning of the one part, and Samuel Groff and Henry Keneagy of the other part, on the 31st of March, 1884, conveying the interest of William Henning in the land in the bill and proceedings mentioned, as evidenced by the written instruments executed between them at that time, was not a mortgage, but a sale of the interest of said Henning in said land, subject to the provisions contained in the agreement between William Henning of the one part,

and Samuel Groff and Henry Keneagy of the other part, entered into on the 31st of March, 1884. The court further held that William Henning never repurchased the undivided half interest in five-eighteenths of the land in the bill mentioned from Samuel Groff and Henry Keneagy, but that Samuel B. Shank was entitled, by purchase and assignment, to the rights and interests of the said William Henning under said agreement of March 31, 1884, between Henning, Groff, and Keneagy; and the court further held that William B. Given had become the owner of all rights and interests of Samuel Groff and Henry Keneagy under the instrument of writing and the agreement aforesaid. The court further held that the true construction of said agreement was as follows: That William Henning sold his interest in the land therein mentioned to Samuel Groff and Henry Keneagy, reserving the right to require them, before selling such interest purchased by them to any party or parties other than the parties who might purchase the whole tract of nine thousand three hundred and eighteen and three-eighth acres mentioned therein, to give said Henning notice, as provided by said agreement, of any offer they might have for said interest, which they were willing to accept, said Henning to have the right, within the time prescribed by the agreement, to purchase such interest at the price and upon the terms of said offer; that this agreement also required said Groff and Keneagy to sell said interest in this land whenever C. J. Rhodes, Jacob Shank, and Daniel Herr sold their interest in the land therein mentioned, provided that said Groff and Keneagy should not be required to sell such interest for less than twelve thousand dollars, with interest thereon from March 31, 1894, and the taxes that might have been paid by them on said land since March 31, 1894; that whenever the said interest in this land should be sold by Groff and Keneagy, or their assigns, after deducting the sum of twelve thousand dollars with interest thereon from March 31, 1884 (the date of said agreement), and the taxes paid by them from that date up to the time of sale, the residue of the proceeds should be equally divided between said Groff and Keneagy or their assigns, and the said William Henning and his assigns. The plaintiff requested the court to determine, in addition to what was decided in this

decree, what rights, if any, the plaintiff had in the land involved in this suit, and what rights, if any, the plaintiff had to the rents and profits of said land, and in the lumber cut from said land, and what rights, if any, the plaintiff had to have said land sold or to demand of William B. Given to sell said land, which relief was refused by the court, and from this decree this appeal was applied for and obtained.

The first assignment of error relied upon claims that the court erred in deciding that the assignment made March 31, 1884, by Willim Henning to Samuel Groff and Henry Keneagy, of the William Henning interest in the land in the bill mentioned, was not a mortgage. In considering the question raised by this assignment of error, and the propriety of this portion of the decree, we must first look to the true character and legal effect of the deed from William Henning and wife to Amos Herr, which on the face of it appears to have been an absolute conveyance of said Henning's interest, but which is shown by the testimony in the cause, and by the manner in which it was subsequently treated by the parties thereto, to be merely a conveyance to secure a repayment to said Amos Herr of the sum of six thousand two hundred and twelve dollars and thirty-five cents, the consideration mentioned in said deed. Amos Herr, in his deposition, in answer to the following question: "You have stated that you held this deed as collateral. For what sum of money or property did you hold it as collateral?" Answered: "For money he owed me, mentioned in the deed." And in reply to the question, "I see that the consideration named in said transfer is stated at $8,002.21. Now, please state what constituted said consideration,"—answered, "Money that I loaned him, principal, interest and taxes." William Henning in his deposition says that the conveyance to Herr was executed as security for six thousand two hundred and twelve dollars and thirty-five cents borrowed by him from said Herr; that he had the money from March 5, 1881, until March 31, 1884, when the debt amounted to eight thousand and two dollars and twenty-one cents; that he borrowed twelve thousand dollars from Groff and Keneagy, eight thousand and two dollars and twenty-one cents of which amount was to pay Herr, and the balance to start up in the grain busi-

ness. A question is raised by exception to the competency of the testimony of Henning on account of said Keneagy being dead at the time said evidence was given. This exception, however, I do not regard as well taken, because Groff was examined in regard to the transaction, and North, who appears to have owned one-fourth of the interest of Given as assignee from Keneagy's estate, also testified in regard to the same transaction.

That a deed absolute on its face may be shown, by oral testimony and the surrounding circumstances, to be a mortgage, has been more than once held by the decisions of this Court. The case of *Kluck* v. *Price*, 4 W. Va. 4, was a case somewhat similar to the one under consideration in its facts, which facts were set forth in the second point of the syllabus as follows: "P. and K. were citizens or New York. P. owned lands in this State, and employed K. as an agent to come to this State, and endeavor to sell the same. K. failed to make sale, and, learning from P. that he was in straitened circumstances for money, proposed to loan him money at rates that were exorbitant and usurious, if he would execute to him a deed for the land as security. P. executed a deed that was absolute and in fee-simple on its face, and K. executed on the same day an agreement to P., stipulating that he might elect to repurchase the land in 3 months, for a certain sum, and certain other and greater sums, in 6 and 12 months, respectively, if he would so elect at the expiration of 6 months from the date of the agreement, which sums were largely in excess of the consideration expressed in the deed, and 6 per cent. interest thereon. K. refused to permit P. to repurchase after failure to elect at the expiration of 6 months, claiming that the sale and deed were absolute. P. filed his bill to cancel the deed, alleging that the transaction was only for the security of money, and was usurious in its character. The proofs in the cause tended to show that the transaction was a loan of money, and the land was held as security. Held, that the transaction was in effect a mortgage, and that P. was entitled to redeem the land upon the payment of the consideration expressed in the deed, with the interest thereon." In support of this proposition, see, also, the case of *Lawrence* v. *Du Bois*, 16 W. Va. 443; *Davis* v. *Demming*, 12 W. Va. 247; *Hoff-*

*man* v. *Ryan*, 21 W. Va. 415, second point of syllabus; *Gilchrist* v. *Beswick*, 33 W. Va. 168 (10 S. E. 371), first point of syllabus; *McNeel's Ex'rs* v. *Auldridge*, 34 W. Va. 748 (12 S. E. 851).

Considering the testimony in this cause in the light of the authorities above cited, I am led to the conclusion that the deed from Henning to Herr must be regarded as a mortgage, and, such being the case, we come next to consider the effect of the assignment and transfer of said mortgage from Herr to Henning and from Henning to Groff and Keneagy. We find the law stated in Jones on Mortgages (section 805) as follows: "The fact that an assignment was made at the request of the mortgagor, to one who advanced him money at the time, is evidence of an agreement between the parties that the mortgage should no longer continue a security for the payment of the debt which it was originally given to secure, but should be security for the debt then created." It appears from the testimony in this case that Henning borrowed the money from Groff and Keneagy to discharge his debt to Herr, secured by said deed, and when paid Herr assigned the deed to Henning, who assigned it to Groff and Keneagy to secure the money borrowed. Henning only held the equity of redemption while Herr held the deed. The consideration was paid by Groff and Keneagy for the assignment, and, although the assignment was made to Henning, yet Henning on the same day assigned said deed to Groff and Keneagy, both assignments being made by indorsement on the Herr deed. The effect of these assignments was merely to allow Groff and Keneagy to step into the shoes of Herr as to said mortgage, and thus said Groff and Keneagy became the holders of said deed as security for the money loaned and advanced by them to discharge the Herr debt. Another circumstance which may throw some light upon the intention of the parties to these transactions is the language used in making the assignments, the same language being used in each. No words of grant or conveyance are found therein, such as are usually found in a deed, but, after mentioning the consideration, they assign, transfer, and set over to the parties, naming them, their heirs and assigns, all their right, title, and interest in the within deed, and the properties and lands thereby conveyed,

showing that the intention was in each instance to transfer the interest held by the assignor in said deed, whatever its character might be, and, as I think, clearly to transfer the security conferred upon Herr by said mortgage to Groff and Keneagy.

We come next to consider the agreement entered into the same day between Groff, Keneagy, and Henning, and from that paper it is apparent that it was not the intention that Groff and Keneagy should take the absolute title to the interest in said land which was mortgaged by Henning to Herr, because it is provided therein that, if said Groff and Keneagy sold said interest, they were to deduct from the purchase money the twelve thousand dollars they had loaned to Henning, with the accrued interest thereon, and the taxes which they might have paid; and it was further provided that if said land was sold for an amount more than sufficient to pay said twelve thousand dollars, interest and taxes, they were to pay to William Henning one-half of the surplus, retaining the other half. It was further agreed that, at any time the parties interested in said land wished to sell the same as a whole, Groff and Keneagy were to sell their interest at the same time, but they should not be required to sell for a sum less than the twelve thousand dollars invested by them, interest and taxes,—showing that the object was to secure said twelve thousand dollars. It was further agreed that said Groff and Keneagy should not sell their interest in said land, to any party other than those who bought the whole tract, without giving Henning notice of such proposed sale, and the privilege, for a reasonable time thereafter, to buy said land, not to exceed three months, which agreement was to include and be applicable to the heirs, executors, and assigns of the parties; and if said Henning should decide to buy said interest from Groff and Keneagy at a price they offered to accept from other parties, he was allowed to purchase upon the same terms as was offered to the other parties, and to deduct any amount of money from the purchase money that he (Henning) might be entitled to under this agreement. On the 20th day of November, 1888, John H. Keneagy, executor of Henry Keneagy, and Samuel Groff, wrote to William Henning, who was then residing in Illinois, by registered letter, informing him that they

were offered sixteen thousand dollars for their interest in this West Virginia land, and informing him that they would accept it unless, in accordance with the agreement, he wished to take it, which letter was replied to by registered letter on December 6, 1888, notifying said parties that he would take the land at that price. Nothing further was heard from said Groff and Keneagy by Henning, and on the 15th day of April, 1891, William Henning conveyed all of his interest in the land to the plaintiff, Samuel B. Shank. In the fall of 1891 it appears that the plaintiff, Samuel B. Shank, went to John H. Keneagy, executor, etc., and Samuel Groff, and offered to pay them the money they had advanced to William Henning, with its accrued interest and taxes, which they declined to receive, although he showed them the letter which they had written to Henning; and on the 27th of April, 1892, said Samuel Groff and the heirs of Henry Keneagy, deceased, conveyed all their interests in said land to William B. Given for the sum of eighteen thousand seven hundred and twenty-seven dollars and seventy-four cents, the same being the amount which was due them for money advanced to Henning, with the interest thereon and taxes. Said William B. Given had full notice of the rights acquired by the plaintiff from Henning, and it appears from the evidence in the cause that he went to Henning, and offered him five thousand dollars for his interest in said land, which Henning declined, informing him that he had sold his interest to the plaintiff, Samuel B. Shank. The evidence in this case clearly indicates that not only Samuel Groff and the executor of Henry Keneagy had full notice of the rights of William Henning and the plaintiff as his grantee, but that William B. Given also had full notice of the rights of the plaintiff derived from said Henning, and he cannot be regarded in any sense as an innocent purchaser of the interest of the plaintiff or William Henning. The circumstances shown by the evidence in the cause also fully establish that the deed from William Henning to Amos Herr, although absolute on its face, was intended as a mortgage, and the indorsements made thereon did not in any manner change its character. The agreement entered into at the same time between Groff, Keneagy, and Henning also shows on

its face that the entire object of the transaction was to secure to Groff and Keneagy the amount of money advanced by them to Henning, and, in the event of a sale of said land for any amount in excess of the amount thus secured, to allow said Groff and Keneagy one-half of the profits thus arising as a premium on the money loaned; and containing a further clause, which allowed Henning or his assigns to redeem the said land in the case of a proposed sale by Groff and Keneagy, to any party or parties other than parties who should buy the whole tract, by paying the amount offered by such parties, and allowing him to deduct any amount from the purchase money that he might be entitled to under the agreement.

In the case of *Hoffman* v. *Ryan*, 21 W. Va. 415, this Court held that "though a deed be absolute on its face, and a contract is made at the same time in writing between the grantor and the grantee, whereby the grantee is authorized to sell the land or a part of it in a specified time, and to pay back the consideration for the deed, yet, in the absence of parol proof to the contrary, such deed will be regarded as a mortgage." In the case of *Davis* v. *Demming*, above cited, GREEN, PRESIDENT, in delivering the opinion of the court, said: "A conditional sale, with the right to repurchase, very nearly resembles a mortgage. The distinction is that if the money advanced is not loaned, but the grantor has a right to refund it in a given time, and have a reconveyance, if the debt remains the transaction is a mortgage; otherwise not. In case of doubt, however, a court of equity will always lean in favor of a mortgage rather than a conditional sale." The evidence in this case shows that William Henning signified his willingness to take said property at the price of sixteen thousand dollars within the time prescribed in said agreement. It also shows that said Henning was ready to comply with his offer. The plaintiff, as a grantee and assignee of the rights of Henning, had a right to pay the money interest and taxes due to said Groff and Keneagy in redemption of said land, and they had no right to refuse the same, and afterwards convey the same to William B. Given for the amount due them, including interest and taxes. My conclusion, therefore, is that the court erred in holding that this deed, though absolute on its face, was not shown to be

a mortgage by the evidence and the circumstances attending its execution and transfer, including the written instruments executed between the parties at the time.

I am further of opinion that the circuit court erred in holding that William B. Given had become the owner of all the rights and interests of Samuel Groff and Henry Keneagy under the instrument of writing and agreement aforesaid. The court also erred in construing said agreement to the effect that William Henning sold his interest in the land therein mentioned to Groff and Keneagy, reserving the right to require said Groff and Keneagy, before selling said interest purchased by them to any party or parties other than those who might purchase the whole tract, to give said Henning notice, as provided by said agreement, of any offer they might have for said interest, which they were willing to accept, said Henning to have the right within the time to purchase said interest at the price and upon the terms of said offer. If the written agreement between Henning, Groff, and Keneagy could be considered as conferring a power of sale upon Groff and Keneagy, yet it did not take from Henning or his grantee the right to redeem the land. The plaintiff, Samuel B. Shank, had the right to redeem the property by paying the amount due upon the mortgage, with its interest and the taxes, and Groff and Keneagy had no right to refuse it; neither could they sell the property after the offer to redeem. Before selling the property subsequently they were bound, under the agreement, to give Henning, or the plaintiff as his grantee, notice, and allow one of them to take the property by paying the amount which they were offered, if Henning or plaintiff accepted the proposal within three months. For these reasons the decree complained of must be reversed, with costs.

*Reversed.*